## JULIA O'REILLY AND ANOTHER v. FRITZ MILLER AND ANOTHER.[1]

April 28, 1939.

No. 31,996.

*Kelly & Mangan,* for relators.
*Daniel F. Foley,* for respondents.

GALLAGHER, CHIEF JUSTICE.

Writ of *certiorari* to review decision of industrial commission.

On June 1, 1937, at about noon, Maurice O'Reilly was found unconscious in his automobile. It had run into the ditch, and the ignition was still on. The glass on the left door of the automobile, a one-seated coupé, was broken. The road upon which O'Reilly had been travelling was rough. He was, at the time of the accident, in the course of his employment as a salesman for Fritz Miller, doing business as Miller Implement Company.

O'Reilly was taken to the office of Dr. Liffrig in Goodhue, a few miles from the scene of the accident. Restoratives proving ineffectual, he was taken to St. John's Hospital at Red Wing. On June 15 he was taken from this hospital to his home in Cannon Falls, where he died on June 18. An autopsy was held on July 8.

[1] Reported in 285 N. W. 526.

Subsequently a petition was filed with the industrial commission by Julia O'Reilly, widow of the deceased, against Fritz Miller, doing business as Miller Implement Company, employer, and Employers Mutual Casualty Company of Des Moines, Iowa, insurer, wherein the petitioner claimed benefits under the workmen's compensation law for herself and her minor children. The employer and insurer interposed a joint and separate answer, and the matter came on for hearing before a referee, who made a number of findings of fact, including the following:

"5. That as a result of said accident, the employe was disabled from June 1, 1937, to June 15, 1937, on which date disability as a result of said accident terminated.

"6. That the employe sustained no permanent disability as the result of said accident. * * *

"10. That on June 18, 1937, the employe herein died as the result of a diseased condition and that said diseased condition was neither caused or aggravated by the accidental injury hereinbefore referred to."

The petitioner appealed to the industrial commission from the decision of the referee on the ground that the findings set out above, as well as the award of compensation entered in pursuance thereof, were not warranted by the evidence. On appeal the commission set aside these findings and submitted therefor the following:

"5. That as the result of said accident the employe was disabled from June 1, 1937, to June 18, 1937, on which latter date he died as the result of the said accident."

The award of compensation was altered accordingly.

Upon petition of the employer and insurer a writ of *certiorari* issued from this court. The issue with which we are confronted is: Was the industrial commission justified, in light of the evidence disclosed by the record, in concluding that Maurice O'Reilly died as the result of the accident previously mentioned?

The findings of fact of the commission are entitled to great weight, and this court will not disturb them unless they are mani-

festly contrary to the evidence. In other words, if after an impartial consideration of the evidence and of the inferences which may fairly and reasonably be drawn therefrom reasonable minds might reach different conclusions upon the question, the findings must stand. 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 10426, and authorities cited in footnote 24.

The referee and the commission were confronted with the conflicting testimony of medical experts. Dr. William Liffrig, physician and surgeon engaged for the past nine years in general practice at Goodhue, testified that he saw the patient after the accident at about noon of the day it occurred and that he then made an examination of O'Reilly, who was still unconscious. At this time, according to Dr. Liffrig, the deceased had a bump or swelling over the left temporal region slightly above and forward of the ear covering an area of about an inch in diameter and being about one-fourth of an inch high. The bump appeared to him to be of recent origin and continued to swell until it covered an area of from one and one-fourth to one and one-half inches in diameter and raised to a height of about three-eighths of an inch—at which size it remained for a day or two, when it commenced to subside. The doctor was of the opinion that there was moderate concussion of the brain at this time. He attended the patient until he left the hospital and was present at the post-mortem examination conducted by Dr. J. S. McCartney, associate professor of pathology at the University. He expressed the opinion that the blow which O'Reilly had received caused the concussion, which produced a hemorrhage, which brought about the death of the patient; that the blow was the sole contributing cause of the death; that in his opinion the injury directly or indirectly was responsible for the fatal hemorrhage.

Dr. T. Vaaler, a physician and surgeon practicing for the past nine years at Cannon Falls, testified that he saw the deceased about three hours before his death. He expressed the opinion that the death was the result of a hemorrhage and that probably the hemorrhage was traceable to the accident. He later conceded that he was neither certain nor reasonably certain that the hemorrhage was an effect of the accident.

While neither Dr. Liffrig nor Dr. Vaaler examined the brain under a microscope at the autopsy, Dr. McCartney and Dr. Hannah, a specialist in the field of neurology, did make such an examination. From their findings they concluded that the accident did not cause the death of O'Reilly either directly or indirectly.

It is obvious that there was competent evidence from which the commission could conclude that the death of O'Reilly resulted from the accident. The function of this court in cases such as this is to determine whether the findings of fact of the commission are reasonably supported by the evidence. In our opinion they are. We must therefore accept them as conclusive.

Respondents will be allowed $100 as attorney's fees in this court. Affirmed.

MR. JUSTICE HILTON, incapacitated by illness, took no part.