JOSEPH ZOBITZ v. CITY OF ELY.
JULIUS SCHMAHL, CUSTODIAN SPECIAL COMPEN-
SATION FUND, ADDITIONAL RESPONDENT.[1]

March 23, 1945.

No. 33,907.

*D. A. Bourgin,* for relator.

*A. W. Nelson,* for respondent.

*J. A. A. Burnquist,* Attorney General, and *Victor H. Gran,* Assistant Attorney General, for Julius Schmahl as custodian of special compensation fund.

LORING, CHIEF JUSTICE.

Relator obtained a writ of *certiorari* to review the decision of the industrial commission which, on appeal, had reversed in part the findings of the referee, based on hearings conducted at its order. The present claim is based upon two distinct accidents.

[1]Reported in 18 N. W. (2d) 126.

On July 13, 1934, Joe Zobitz, while in the employ of the city of Ely, received an injury to his right arm. A subsequent operation was unsuccessful, and he was allowed compensation based on 40 percent loss of the use of his right arm. The case was reopened on February 13, 1942, on the basis of an affidavit by a physician asserting a claim of 60 to 65 percent disability in the loss of use of the right arm. The case was referred to Referee Harkness, and shortly thereafter the employer voluntarily paid compensation for 60 percent disability. Between these two dates the relator had suffered another injury.

Relator was working as an attendant at a skating rink. On the morning of February 2, 1940, at about eight a. m., while out to gather wood for the fire, he fell and struck his abdomen on a stone.

A claim petition resulted in findings that there was a total temporary disability of 35 weeks. The referee, Faricy, found no relation between a hernia which relator had and the second accident.

On November 17, 1942, a stipulation to reopen the case was filed, and the case was reopened and referred to Referee Harkness, who conducted a hearing on both claims and filed findings and a decision covering both accidents. He found that the accident in 1934 resulted in permanent total loss of the use of the right arm. He also found that the second accident resulted in disability present at the time of the hearing on November 15, 1943, and that, as a result of both accidents, the employe was permanently and totally disabled.

The industrial commission, on appeal, reversed these findings to the extent of finding that, as a result of the injury to the right arm received in 1934, relator suffered a 65 percent total permanent disability and also that the second accident resulted in total temporary disability which continued from February 2, 1940, until June 27, 1941. The commission denied any further recovery and denied liability on the basis of traumatic neurosis.

Relator contends that the evidence compels a finding that traumatic neurosis resulted from both accidents; that he suffered total permanent disability of the right arm for industrial purposes; and

that, as a result of both accidents, he was totally and permanently disabled.

The issue before the industrial commission was the extent of relator's injuries, and the issue here is whether the evidence is reasonably sufficient to support its findings. Leland v. St. Olaf Lutheran Church, 217 Minn. 355, 14 N. W. (2d) 340; O'Reilly v. Miller, 205 Minn. 228, 285 N. W. 526; 6 Dunnell, Dig. & Supp. § 10426, and cases cited under note 24.

■ As so ably pointed out in the memorandum opinion by Commissioner Stewart, the evidence, first as to the injury to the right arm, shows that the testimony by the doctors rated the disability not higher than 65 percent. The testimony ranged from 25 to 65 percent. They granted compensation on the basis of 65 percent. The commission was satisfied that a substantial usefulness remained in the arm, and in the light of the medical testimony that finding is sustained.

■ Hernia, which relator attempted to show as a result of the second accident, was not found by Dr. O. W. Parker, who examined relator after the fall on February 2, 1940. It was diagnosed by Dr. W. G. Strobel on April 18, 1940, who testified that it was not traumatic and that there were no objective signs of injury to the abdomen. A year later, this hernia was repaired in an operation by Dr. E. W. Peterson, who advised relator to return to work June 27, 1941. Although there was medical testimony to the effect that the hernia was not cured by the operation, the neutral medical testimony and the preponderance of the evidence were to the effect that it was cured and that relator could return to work on that date. That finding must also be sustained.

■ The only basis for further compensation is the claim that relator suffered traumatic neurosis (defined by Dr. E. M. Hammes as "a condition of the functional nervous system where a patient develops symptoms following an accident for which we are unable to find any organic cause").

The testimony of Dr. Hammes, a neutral witness and a neurologist, was that relator did not suffer disabling traumatic neurosis.

414

In the light of that testimony and in the absence of overwhelming evidence to the contrary, the conclusion that any neurosis which relator had did not incapacitate him from work is well sustained.

Our decision in this case makes it unnecessary to consider the position of the custodian of the special compensation fund.

Affirmed.